IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PERSONAVERA, LLC *et al.*                   :
                                            :   CIVIL ACTION
                v.                          :
                                            :   NO. 18-633
COLLEGE OF HEALTHCARE                       :
INFORMATION MANAGEMENT                      :
EXECUTIVES *d/b/a CHIME*                    :
*Healthcare Innovation Trust et al.*        :

## MEMORANDUM

**SURRICK, J.**                                        **APRIL 8, 2021**

Presently before the Court is Defendant College of Healthcare Information Management Executives' (d/b/a CHIME), Healthcare Innovation Trust's, Russell Branzell's, and Keith Fraidenburg's Motion to Dismiss pursuant to Rule 12(b)(6).  (Mot. to Dismiss, ECF No. 7.)  This action arises from Plaintiffs Personavera, LLC's and Michael Braithwaite's participation in a contest, sponsored by Defendants, offering a one-million-dollar prize.  After Plaintiffs had expended significant effort and resources developing a prototype for the opportunity to win, and after Plaintiffs submitted that prototype to Defendants, Defendants cancelled the contest and refused to return Plaintiffs' prototype.  Plaintiffs bring the instant action alleging breach of contract, promissory estoppel, fraud, negligent misrepresentation, conversion, and violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505, and Illinois Prizes and Gifts Act, 815 Ill. Comp. Stat. 525.  (Compl., ECF No. 1.)  For the following reasons, Defendants' Motion to Dismiss will be denied.

I.      BACKGROUND

Defendant CHIME is an Illinois non-profit corporation that "represents chief information officers and information technology professionals involved in providing and managing information technology in healthcare settings." (Compl. ¶¶ 4, 23.) Defendant Branzell is CHIME's Chief Executive Officer and President. (*Id.* ¶ 8.) Defendant Fraidenburg is CHIME's Chief Operating Officer and Vice President. (*Id.* ¶ 10.) Part of CHIME's business is to encourage development of an electronic national patient identification ("NPI") system with which healthcare providers can quickly identify and exchange information about a patient. (*Id.* ¶ 26, 29.)

Branzell and Fraidenburg are, respectively, CEO and President, and COO and Vice President, of Defendant Innovation Trust, also an Illinois non-profit corporation. (*Id.* ¶¶ 9, 11.) CHIME created Innovation Trust as a vehicle for CHIME, Branzell, and Fraidenburg to design, promote, and run a "challenge" in which members of the public were invited to compete at multiple levels to design an accurate and useable NPI system. (*Id.* ¶¶ 14, 33, 36, 44.) In the first level of the Challenge, termed the "Concept Blitz Round," participants were required to submit a proposal for an NPI system. (Initial Guidelines 1-2, Compl. Ex. A.) The two top-scoring proposals, based on judging criteria published in guidelines on the website, would each win $30,000. (Compl. ¶ 39.) In the second level of the Challenge, termed the "Final Innovation Round," participants were to "improve upon their designs from the Concept Blitz Round and to build prototypes that demonstrate the functionality and performance of their design concept." (Initial Guidelines 6.) The Final Innovation Round itself had two levels: the first level, in which participants were again asked to submit proposals for an NPI design, and the second level, in

which the proposal winners would submit prototypes of their design.  (*Id.* at 6-7.)  The creator of the winning prototype would be awarded one million dollars.  (*Id.* ¶ 40.)

Participants entered the Challenge by accepting an online agreement (the "Agreement" or "Competitor Agreement"), which stated the terms of the Challenge.  (Competitor Agreement Preamble, 1, Compl., Ex. B.)  Section 6 of the Agreement stated that "[t]he Agreement, together with the Challenge Guidelines, constitutes the final, complete, and exclusive statement of the agreement of the parties . . ."  (*Id.* at § 6.)  The Agreement and the Guidelines were promulgated through HeroX, a website "that is used by companies to conduct and administer contests." (Compl. § 42.)  The Agreement also permitted Innovation Trust to cancel the Challenge at any time and stated that participants were responsible for any costs incurred in participating in the Challenge.  (Competitor Agreement §§ 5, 6(c).)  The Competitor Agreement also included an Illinois choice-of-law clause.  (*Id.* at § 6.)

Plaintiff Michael Braithwaite is a licensed professional engineer with a history of service in the U.S. Navy.  (Compl. ¶ 54.)  He has worked as an engineer for more than thirty years, including for aerospace contractors and biometric developers.  (*Id.* ¶ 57.)  He also owns 93.375% of the outstanding shares of Plaintiff Personavera, LLC.  (*Id.* ¶ 3.)  Beginning in January of 2016, Braithwaite entered the Challenge and designed a "biometric system that uses the unique pattern of a person's iris and shape of their face to identify them."  (*Id.* ¶¶ 58-61.)  On June 1, 2016, he was announced as one of the top two winners of the Concept Blitz Round and was awarded $30,000.  (*Id.* ¶¶ 65, 67.)  When announcing Braithwaite as a winner, Branzell was quoted as stating that the proposals "reinforce[] CHIME's belief that we can develop a solution that's scalable across the industry."  (*Id.* ¶ 66.)

3

After CHIME announced the winners of the Concept Blitz Round, it updated its Guidelines for the Final Innovation Round.  (*Id.* ¶ 70; Updated Guidelines, Compl. Ex. C.)  The updated Guidelines included a new rubric for judging the proposal round of the Final Innovation Round and stated that the "[r]equirements for the prototype submission will be announced in October . . ."  (Updated Guidelines 4.)  Braithwaite, either directly or through Personavera, organized a team of more than twenty individuals and companies to help formulate a submission. (Compl. ¶¶ 82-83.)  Meanwhile, Defendants extended the deadline for the proposal round two times, "encourag[ing] continued participation" and stating that they wanted to give participants "ample time" to produce their submissions.  (*Id.* ¶¶ 87, 91.)  Plaintiffs submitted their proposal by the March 1, 2017 deadline.  (*Id.* ¶¶ 99, 101.)  After Plaintiffs submitted their proposal, Defendants extended the deadline for judges to select the finalists that would submit prototypes. (*Id.* ¶ 102.)  On May 15, 2017, an announcement on the Challenge website identified Plaintiffs' submission as one of the round's four finalists.  (*Id.* ¶¶ 107-08.)  In the same notification, Defendants stated that the finalists "exhibited an extraordinary level of innovation, adoptability and implementation in creating a viable solution to solve this critical patient safety issue" and stated that they were "continu[ing] on the path toward awarding the $1 million dollar prize."  (*Id.* ¶¶ 111-12.)  Shortly thereafter, on August 9, 2017, Fraidenburg was quoted as stating that the Challenge was so important to CHIME that CHIME itself would fund the million-dollar prize if necessary and that such funding "was guaranteed at the start."  (*Id.* ¶ 117.)  Defendants contacted Braithwaite directly to discuss his participation in the prototype round.  (*Id.* ¶ 115.)

During this time, Defendants did not promulgate the judging criteria for the prototype round as promised.  (*Id.* ¶¶ 116, 122.)  Nevertheless, Plaintiffs submitted their prototype and, on

4

October 16, 2017, were notified when the judges had completed testing of all the prototypes.  (*Id.* ¶ 120.)

On November 15, 2017, CHIME announced on the Challenge website that it was suspending the Challenge and informed Plaintiffs that it would not be awarding the one-million-dollar prize.  (*Id.* ¶¶ 124-25.)  The website announcement stated the reasoning for this decision was Innovation Trust's "failure to 'achieve the results we sought to this complex problem' and 'industry' and 'government's' failure to have 'the same level of passion and commitment that our members show….'"  (*Id.* ¶ 131.)  In a call with Braithwaite, CHIME personnel stated that the cancellation was not related to the quality of the submissions, but rather was due to CHIME's inability to achieve unstated regulatory objectives with Congress.  (*Id.* ¶¶ 133-34.)  It was only later that CHIME representatives finally stated that the cancellation was due to the poor quality of the submissions.  (*Id.* ¶ 135.)

After the Challenge was cancelled, Plaintiffs "repeatedly demanded return of the prototype."  (*Id.* ¶ 199.)  Defendants have refused to return the prototype.  (*Id.* ¶ 200.)

Plaintiffs filed a Complaint alleging:  breach of contract, promissory estoppel, fraud, negligent misrepresentation, conversion, and violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505, and the Illinois Prizes and Gifts Act, 815 Ill. Comp. Stat. 525.  Defendants move to dismiss the Complaint in its entirety.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary elements." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556).

On a motion to dismiss for failure to state a claim, we "must 'accept as true all factual

allegations in the complaint and draw all inferences from the facts alleged in the light most

favorable to [the plaintiff].'" *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (quoting

*Phillips*, 515 F.3d at 230).  However, we need not accept as true "unsupported conclusions and

unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d

Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion

Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997) (citations omitted).

## III.   DISCUSSION

### A.     Breach of Contract Claim (Count II)

Plaintiffs assert that by promulgating the Challenge Guidelines and Agreement,

Innovation Trust extended to them a unilateral offer that they accepted through performance of

the contest requirements.  Plaintiffs contend that Innovation Trust breached its contract by

cancelling it after full performance and acceptance.  Defendants argue that the Challenge was not

a unilateral offer to enter into an agreement, but rather a part of a larger program that is not

subject to contract law.  Defendants also argue that, even if Innovation Trust extended a

6

unilateral offer to enter into an agreement, Plaintiffs did not accept the offer because they did not fulfill all of the contest's judging criteria. Defendants also argue that even if Plaintiffs fully performed by fulfilling all of the judging criteria, Innovation Trust was fully within its rights to cancel the Challenge because the written terms of the offer contained an at-will cancellation provision.

### 1.   Existence of a Contract

Plaintiffs have provided sufficient facts to establish the existence of a unilateral contract between the parties. A unilateral contract is a contract in which one party makes a promise in exchange for the other's performance. *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987).[1] "By performing, the [performing party] both accept[s] the contract and provide[s] the necessary consideration," thereby binding the promising party to fulfill their promise. *Id.* A contest is a common example of a unilateral contract: "The promoter of such a contest, by making public the conditions and rules of the contest, makes an offer to a possible participant and if a contestant performs all of the requirements of the offer, in accordance with the published rules, a legally binding contract results." *Harlem-Irving Realty, Inc. v. Alesi*, 425 N.E.2d 1354, 1357 (Ill. 1981) (citation omitted); *see also James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (generally discussing formation of unilateral contract in context of prize-winning contests); *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1249 (Pa. Super. Ct. 1989) (same). However, the offeror of a contract has the right to dictate the terms of acceptance

---

[1] The parties agree that the contract claim is governed by Illinois law because the Competitor Agreement contains an Illinois choice-of-law provision. (Mot. 5-6; Resp. 17.) To state a claim for breach of contract under Illinois law—and Pennsylvania law—a plaintiff must show: (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *Mack Indus. v. Vill. of Dolton*, 30 N.E.3d 518, 528 (Ill. App. Ct. 2015); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011).

of the offer, and there is no contract until such terms are fulfilled.  *See All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 696 (Ill. App. Ct. 2010) ("[W]here the parties make a writing and its execution conditions precedent to its completion, there is no contract until this occurs." (citation omitted)); *Trego v. Pa. Acad. of Fine Arts*, 3 A. 819, 821 (Pa. 1886) (holding that sponsor of art contest had no duty to award first-place prize when judges did not feel any participants' works merited such award, and rules explicitly left such discretion to judges).

In this case, as in *Harlem-Irving*, Innovation Trust published an offer in the form of the conditions and rules of the contest, i.e., the Guidelines and the Competitor Agreement.  Together, those documents promised participants that they would have the opportunity to win a prize if they submitted proposals and prototypes in accordance with the directions contained therein, including the judging criteria.  Defendants argue that the Challenge is more akin to an airline loyalty program, as in *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124 (7th Cir. 2014).  In *Lagen*, the plaintiff flew one million miles with the defendant airline and was not rewarded with the expected benefits when the airline changed its loyalty program benefits.  *See id.* at 1126.  The court found that the loyalty program was not an offer to enter into a unilateral contract, but rather a program to encourage consumer loyalty.  *See id.* at 1127.  Defendants' argument is unpersuasive.  In the instant context, the Challenge is a clear example of a contest and, as indicated above, contests are frequently characterized as unilateral contracts.  We will not depart from that analysis here.  We note that the *Lagen* holding has primarily been cited with reference to other airline loyalty programs.  *See Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 950 (7th Cir. 2016); *Johnson v. United Airlines*, No. 4:14-00646, 2016 U.S. Dist. LEXIS 68874, at *28-29 (S.D. Tex. Apr. 20, 2016); *Banakus v. United Cont'l Holdings, Inc.*, No. 12 C 6244, 2015 U.S. Dist. LEXIS 35205, at *7-8 (N.D. Ill. Mar. 20, 2015).  Moreover, Defendants

8

provide no explanation for their assertion that the Challenge is more like an airline loyalty program than a traditional contest, and we see few similarities.  Finally, Defendants chose to conduct and administer the Challenge from the HeroX website – a website that is used specifically for contest activities.  (Compl. § 42.)

Plaintiffs allege that they fully performed the requirements of the contest in accordance with the rules that were available, thus accepting Innovation Trust's offer.  Their allegations of full performance are supported by comments from Defendants and their representatives that the submissions "reinforce[] CHIME's belief that we can develop a solution that's scalable across the industry" (Compl. ¶ 66); that "continued participation" was "encouraged" after seeing participants' initial proposals (Compl. ¶ 91); that the finalists for the prototype round "exhibited an extraordinary level of innovation, adoptability and implementation in creating a viable solution to solve this critical patient safety issue" (Compl. ¶¶ 111-12); and that the cancellation was not related to the quality of the submissions (Compl. ¶¶ 133-34).

Defendants argue that Plaintiffs' submissions did not meet the judging criteria.  (Reply 2.)  In *Trego*, the Pennsylvania Supreme Court found no error in the trial court's determination that the contest sponsor was within its rights to refuse to issue a first-place prize because of the poor quality of the submissions.  *See Trego*, 3 A. at 819, 821.  That is not the case here. Defendants specifically contradicted their own statement that the cancellation was due to the poor quality of the submissions.  (Compl. ¶¶ 133, 135.)  Defendants' prevarication with regard to their reason for cancellation raises the inference that less-than full performance by Plaintiffs may not have been the true reason for cancellation.  Moreover, Plaintiffs allege that Defendants did not even publish the judging criteria for the prototype round, as it promised to do in the updated Guidelines.  (Compl. ¶ 116; Updated Guidelines 4.)  Defendants' argument that Plaintiffs failed

to fully perform, according to only half-published rules, is in contradiction to its own statements and is unconvincing.  Therefore, taking Plaintiffs' facts as true, Plaintiffs' full performance was an acceptance of Innovation Trust's unilateral offer to enter into a contract, thus creating a contract.  *See Macy v. Brown*, 158 N.E. 216, 219 (Ill. 1927) ("When complainant, within the time limited, accepted defendant's offer the unilateral contract was thereby rendered a bilateral one, and the performance of the contract thus resulting was governed by the ordinary rules pertaining to bilateral contracts.").

2.      *Breach of Duty—Cancellation of Challenge*

Next, we must determine whether Innovation Trust's cancellation of the Challenge constituted a breach of the agreement between the parties.  Generally, principles of contract law dictate that, when a contest participant accepts a unilateral offer by fully performing according to contest rules, a contest sponsor is obligated to award the winner of the contest.  *See, e.g., Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 776 (3d Cir. 1999) (reversing summary judgment on plaintiff's claim that sponsor of contest breached contract to place contest winner in Broadway show); *Frankel v. United States*, 118 Fed. Cl. 332, 335-6 (2014), *aff'd*, 842 F.3d 1246 (Fed. Cir. 2016) (holding that, because FTC contest was unilateral offer, "[t]he FTC was obligated to provide the winner of the competition—who followed the rules—the $50,000 first place cash prize." (citation omitted)); *Cobaugh v. Klick–Lewis, Inc*., 561 A.2d 1248, 1250, 1251 (Pa. Super. Ct. 1989) (affirming trial court's determination that entrant in golf tournament was entitled to prize advertised to whoever made hole-in-one, and listing similar cases).

However, in this case, Innovation Trust explicitly included in the Agreement a provision allowing it to cancel the Challenge at any time for any reason.  (Competitor Agreement § 5.) There is no Illinois case law, and little in Pennsylvania, regarding whether an at-will cancellation

10

provision in a unilateral offer should supersede general contract principles to allow a cancellation of a unilateral offer after full performance by the performing party.  *See Kemmerer v. ICI Ams., Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) (stating, in employment context, that "after the appellants' rights had vested when they completed performance, ICI could not terminate the plan in the absence of a specific provision in the plan authorizing it to do so.").  Other jurisdictions offer little guidance but tend towards allowing the cancellation provision to stand.  *See Englert v. Nutritional Sciences, LLC et al.*, No. 07AP989, 2008 WL 4416597, at *7 (Ohio Ct. App. Sept. 30, 2008) (allowing contest sponsor to reduce award amount after choosing winner because terms of contest stated defendant could modify terms any time before awarding prize); *McBride v. New York City Off-Track Betting Corp.*, 410 N.Y.S.2d 868 (App. Div. 1978) (allowing defendant to cancel tickets with which plaintiff had correctly betted on horses because defendant explicitly reserved right to cancel at any time).  However, the decisions that find that an at-will cancellation provision allows a contest sponsor to cancel or modify a contest, even after full performance by the participants, generally hold that the provision will only stand where it does not render the contract illusory or where the cancellation was not fraudulent or made in bad faith. *See, e.g., Englert,* 2008 WL 4416597, at *5 (holding that defendant's obligations under contest agreement were not illusory and unfettered because defendant's right to modify was limited to any time *before* winner claimed her prize); *McBride*, 410 N.Y.S.2d at 868 ("In the absence of some specific allegation of fraud, OTB is not liable to the plaintiffs for a winner's share in the Pick-Four." (citation omitted)); *see also Giunto v. Fla. Coca-Cola Bottling Co.*, 745 So. 2d 1020, 1022 (Fla. Dist. Ct. App. 1999) (listing cases holding that contest participants are bound by decisions of sponsor *absent fraud or bad faith*).

Plaintiffs have sufficiently alleged that, even if the cancellation provision allows cancellation of the Challenge after Plaintiffs' full performance, Innovation Trust used the provision in a manner that breached the implied covenant of good faith and fair dealing.  As discussed in the next section, the unlimited nature of the cancellation provision may render Innovation Trust's obligations illusory under the contract, thereby rendering the contract unenforceable.

"Good faith is always an inherent quality of any contract, and . . . if the judges act fraudulently, in bad faith and go outside the rules in making a decision, a contestant's agreement not to contest it should not bind him."  *Olschiefsky v. Times Publ'g Co.*, 23 Pa. D. & C.2d 73, 77 (Erie C.P. 1959); *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) ("The duty of good faith and fair dealing is implied in every contract . . .").  Defendants argue that they could not have breached the implied covenant of good faith and fair dealing because that covenant only applies in situations in which one party has discretion in a contract, such that that party must use their discretion in good faith.  (Reply 3.)  They argue that an unambiguous, explicit right to terminate a contract does not implicate the covenant because the other party is aware that the right can be exercised with or without good faith.  (*Id.*)

However, the Seventh Circuit has found that "whether the express terms of the at-will . . . contract allow the [defendant] to [terminate the contract] for any reason is not the end of the analysis."  *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 675 (7th Cir. 2013) (Darrow, J., concurring)[2] (per curiam) (citation omitted).  "Rather, the implied covenant of good faith is used as a construction aid to assist the Court in determining whether the manner in which one party

---

[2] In *Wilson*, the majority expressly relied on the concurring opinion for its reasoning regarding the implied covenant of good faith and fair dealing.  *See id.* at 671.

12

exercised its discretion under the contract violated the reasonable expectations of the parties when they entered into the contract." *Id.*  In *Wilson*, the court found that the plaintiff had sufficiently plead a breach of contract claim based on the implied covenant of good faith and fair dealing, even though the defendant had an absolute right to cancel the contract at any time.  *Id.* at 671 (majority).  Specifically, the defendant gave a "mismatch[ed]" explanation with regard to the alleged breach, thereby raising an inference that the defendant had ended the agreement in an abusive manner, solely to avoid its obligations.  *Id.* at 676 (Darrow, J., concurring).

In this case, Plaintiffs raise nearly identical allegations of contrary explanations with regard to the cancellation, giving an impression of abuse.  Moreover, these conflicting explanations came after Defendants expressly encouraged continued participation, stated that the funding was guaranteed, implied that the proposals were impressive enough to satisfy the judging criteria, and accepted all participants' prototypes.  (Compl. ¶¶ 91, 96-98, 111-12, 115, 117.)  Thus, it was reasonable for Plaintiffs to expect that Innovation Trust would award the prize, and it is plausible that Innovation Trust cancelled the Challenge solely to avoid its obligations thereunder.  *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. 3:15-0290, 2015 WL 8331908, at *7 (M.D. Pa. Dec. 9, 2015) (applying Illinois law and interpreting scope of *Wilson*) ("[I]f the discretion was explicitly granted, then the court must only apply the covenant of good faith if the party has discretion in bringing about a condition that trigger's that party's contractual obligation.").

In addition, in the context of a contest, courts have found a violation of the implied covenant of good faith where the sponsor of the contest conditioned the award on requirements known only to the sponsor.  *See, e.g., Minton v. F. G. Smith Piano Co.*, 36 App. D.C. 137, 147 (1911) (holding that plaintiff may challenge contest sponsor's decisions if those decisions do not

comply with terms of offer, such as judging submissions based on unpublished conditions); *see also Cobaugh v. Klick–Lewis, Inc.*, 561 A.2d at 1251 (allowing claim against contest sponsor to proceed where prize was conditioned on circumstances unknown to plaintiff).  In this case, Plaintiffs allege that the Challenge depended upon conditions known only to Defendants, such as resolution of funding, timing, or regulatory issues.  In support of their allegation, Plaintiffs cite to Defendants' various deadline extensions and inconsistent statements regarding their problems in conducting the Challenge, such as regulatory issues and timeliness.  Like the plaintiffs in *Minton* and *Cobaugh*, Plaintiffs here could not have been aware of these issues or the fact that the contest relied on Defendants resolving these issues before awarding the prize.

For these reasons, Plaintiffs have sufficiently alleged that Innovation Trust breached their contract by exercising the cancellation provision contrary to the implied covenant of good faith and fair dealing.  Therefore, Plaintiffs have alleged facts sufficient to state a claim for breach of contract and Defendants' Motion to Dismiss this claim will be denied.[3]

---

[3] Plaintiffs raise several other arguments in support of their contract claim, such as: ambiguity between the Guidelines, the Competitor Agreement, and Defendants' statements; that Innovation Trust waived the cancellation provision; and that the contract was one of adhesion. (Reply 23-30.)  Because we are denying Defendants' Motion to Dismiss Plaintiffs' contract claim for the reasons stated above, we need not address these arguments.  *See Nova Telecom v. Long Distance Mgmt. Sys.*, No. 00-2113, 2000 U.S. Dist. LEXIS 15510, at *37 (E.D. Pa. Oct. 25, 2000) ("[I]t is well settled that to survive a 12(b)(6) motion to dismiss . . . the Court is under a duty to examine the pleadings to determine if the allegations provide for relief under *any* theory." (emphasis added)).

B.     **Promissory Estoppel (Count I)**

In Count I of the Complaint, Plaintiffs allege that Defendants made express and implied promises to Plaintiffs designed to induce their participation in the Challenge.  Plaintiffs further allege that they expended significant time, energy, and money, in reliance of Defendants' promises.  Defendant seeks dismissal of the promissory estoppel claim, contending that the claim is viable only in the absence of an enforceable contract and here, Plaintiff contends there is an enforceable contract.  Defendants' argument is without permit.  Plaintiffs are permitted to plead promissory estoppel claims and breach of contract claims in the alternative.  *See Olivia B. v. Sankofa Acad. Charter Sch.*, No. 14-867, 2014 U.S. Dist. LEXIS 175319, at *18-19 (E.D. Pa. Dec. 19, 2014) (denying motion to dismiss promissory estoppel claim as premature because further determination was necessary in breach of contract claim); *Resolution Tr. Corp. v. Baker*, No. 93-0093, 1994 U.S. Dist. LEXIS 16218, at *20 (E.D. Pa. Nov. 14, 1994) (same).[4]

Although the Complaint may not explicitly use the word "alternative," we can infer that Plaintiff intended the claims to be plead in the alternative.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

---

[4] Defendants rely on Pennsylvania law and Defendants rely on Illinois law to analyze the promissory estoppel claim.  We need not decide at this stage which state law applies to the promissory estoppel claim.  *See Prudential Ins. Co. of Am. v. Bank of Am.*, 14 F. Supp. 3d 591, 611 (D.N.J. 2014) (postponing choice-of-law determination at motion to dismiss stage as premature); *Graboff v. Collern Firm*, No. 10-1710, 2010 U.S. Dist. LEXIS 118732, at *21 (E.D. Pa. Nov. 8, 2010) (postponing choice-of-law determination at motion to dismiss stage as premature and allowing claim to survive if it meets either Pennsylvania or Illinois law).

### C.    Fraud Claim (Count IV)[5]

Plaintiffs allege that Defendants knowingly made numerous untrue statements about the

Challenge that were material to Plaintiffs' decision to enter the Challenge.[6]  Defendants argue

that the fraud claim should be dismissed because it was not pled with particularity under Federal

Rule of Civil Procedure 9(b), and because there were no misrepresentations of material fact

sufficiently alleged.

Rule 9(b) states that, when a party alleges fraud or mistake in a pleading, the party "must

state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A

claim for fraud must therefore allege "the date, time and place of the alleged fraud or otherwise

inject precision or some measure of substantiation into a fraud allegation."  *Shuker*, 885 F.3d at

778.  The claim must also include "an actual misrepresentation as opposed to assumptions on the

part of the plaintiff."  *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, No. CV 11-5676,

2016 WL 6213035, at \*21 (E.D. Pa. Oct. 24, 2016) (citation and internal quotation marks

omitted).  Plaintiffs can demonstrate an "actual misrepresentation" by alleging facts that

---

[5] The parties assess the remainder of Plaintiffs' common law claims under Pennsylvania
law.  For the reasons discussed above, we will do the same.  *See Prudential Ins.*, 14 F. Supp. 3d
at 611 (postponing choice-of-law determination at motion to dismiss stage as premature and
proceeding under law parties used in their briefings).

[6] Under Pennsylvania law, a plaintiff claiming fraud must demonstrate:
  (1) a representation which is
  (2) material to the transaction at hand,
  (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true
      or false, and
  (4) made with the intent of misleading another into relying on it;
  (5) justifiable reliance on the misrepresentation; and
  (6) that the resulting injury was proximately caused by the reliance.
*See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting *Gibbs v. Ernst*,
647 A.2d 882, 889 (Pa. 1994)) (internal quotation marks omitted).

Defendants acted with a particular state of mind with regard to the truth or falsity of their statement – in this case, knowingly or recklessly.  *See id.*

Defendants argue that Plaintiffs have not plead their fraud claim with sufficient particularity and have not alleged facts to support Plaintiffs' argument that any of Defendants' statements were misrepresentations.  (Mot. to Dismiss 12-14.)  Plaintiffs allege that Defendants made the following misrepresentations:

1.  that the prize of one million dollars would be awarded;

2.  that all the conditions necessary to award the one-million-dollar prize in the Final Innovation Round were contained in the Guidelines;

3.  that the Guidelines contained the "complete rules and submission requirements" for the Challenge;

4.  that CHIME and Innovation Trust would release the prototype judgment criteria to the finalists before it judged the prototypes;

5.  that the Final Innovation Round prototype submissions would be judged on a set of objective criteria that would be supplied to the finalists;

6.  that the funding for the million-dollar prize for the winner of the Final Innovation Round was "guaranteed at the start";

7.  that the First Extension of the deadline to make submissions to the Final Innovation Round was to "ensure that [Challenge participants] have ample time to review the guidelines and fully develop their solutions";

8.  that the Second Extension of the deadline to make submissions to the Final Innovation Round, was because the Challenge presented "a complicated problem and [CHIME had] put some very specific criteria in the guidelines.  [CHIME] want[s] to encourage continued participation in the challenge and ensure that [participants] have enough time to flesh out and test [their] concepts"; and

9.  that the Third extension of the deadline for CHIME judges to select finalists was to allow the judges adequate time to review the submissions.

17

(Compl. ¶ 173.)  These are all stated with particularity and support Plaintiffs' argument that Defendants knew or recklessly disregarded that the statements were false at the time they were made.  Defendants' Motion to Dismiss the fraud claim will therefore be denied.

### D.      Negligent Misrepresentation (Count V)

Plaintiffs allege that Defendants made numerous untrue statements related to the Challenge and specifically related to the Final Innovation Round that were material to Plaintiffs' decision to enter the Challenge.[7]  Defendants seek dismissal of the claim, contending that the nine alleged misrepresentations were not in fact misrepresentations.  Defendants also contend that the economic loss doctrine bars Plaintiffs' claim for negligent misrepresentation.

As we have already concluded that Plaintiffs sufficiently plead misrepresentations under the heightened pleading standard for fraud claims, we necessarily conclude that Plaintiffs have sufficiently alleged misrepresentations for purposes of their negligent misrepresentation claim. *See Lutz*, 376 F. Supp. 3d at 475 (finding that same facts may support both fraud and negligent misrepresentation claims); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 656 (E.D. Pa. 2016) (declining "to apply the heightened Rule 9(b) standards to a negligent misrepresentation claim").

As to Defendants' second argument, they assert that Plaintiffs are only seeking to recover economic damages and that under Pennsylvania's economic loss doctrine, "'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage.'"  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir.

---

[7] "The elements for negligent misrepresentation are: '(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.'" *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 474 (E.D. Pa. 2019) (quoting *Gongloff Contracting, L.L.C. v. L Robert Kimball & Assocs., Architects & Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. Ct. 2015)).

2008) (quoting *Adams v. Cooper Beach Townhome Comtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)); *see also Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 598 (W.D. Pa. 2019) (collecting cases) (holding that economic loss doctrine applies to negligent misrepresentation claims).  Citing to *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285 (Pa. 2005), Plaintiffs contend that Pennsylvania law excepts negligent misrepresentation claims from the economic loss bar.

However, as the Third Circuit recognized in *Sovereign Bank*, the exception to the economic loss rule noted in *Bilt-Rite* was limited to defendants who are specifically in the business of supplying "information that they know will be relied upon by third parties in their business endeavors."  533 F.3d at 180 (citing *Bilt-Rite*, 866 A.2d at 286); *accord Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 223 (3d Cir. 2010); *see also Elliott-Lewis Corp. v. Skanska USA Bldg., Inc.*, No. 14-3865, 2016 WL 2346737, at *4 (E.D. Pa. May 4, 2016) (explaining that *Bilt-Rite* adopted § 552 of the Restatement (Second) of Torts as a "narrowly tailored" exception to the economic loss doctrine, pursuant to which the doctrine does not apply in "'cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons'" (quoting *Bilt-Rite*, 866 A.2d at 287)); *Excavation Techs., Inc. v. Columbia gas Co. of Pennsylvania*, 985 A.2d 840, 843 (Pa. 2009) (finding that the exception to the economic loss rule under § 552 does not apply where defendant "is not in the business of providing information for pecuniary gain").

As we have recognized, the exception for those in the business of supplying information is "'rigidly and narrowly construed.'"  *Scan Source, Inc. v. Datavision—Prologix, Inc.*, No. 04-4271, 2005 WL 974933, at *4 (E.D. Pa. Apr. 26, 2005) (quoting *Palco Linings, Inc. v. Pavex,*

*Inc.*, 755 F. Supp. 1269, 1274 (M.D. Pa. 1990)).  Indeed, the types of businesses that are in the "business of supplying information" for purposes of this exception are typically limited to those who are "'hired to advise,'" *see id.* (quoting *S.C. Elec. & Gas Co. v. Westinghouse Elec. Co.*, 826 F. Supp. 1549, 1557 (D.S.C. 1993), such as attorneys, surveyors, inspectors of goods, architects, designers, accountants, and insurance agencies.  *See id.*; *Elliott-Lewis*, 2016 WL 2346737, at *4; *Church Mut. Ins. Co. v. Alliance Adjustment Grp.*, 102 F. Supp. 3d 719, 726 (E.D. Pa. 2015), *aff'd by* 708 F. App'x 64 (3d Cir. 2017); *First Sealord Surety, Inc. v. Durkin & Devries Ins. Agency, LLC*, 918 F. Supp. 2d 362, 380 (E.D. Pa. 2013).

Defendants do not appear to fit squarely into this class of businesses, but drawing all inferences from the facts alleged in the Complaint in the light most favorable to Plaintiffs, we find that Plaintiffs have plausibly alleged that Defendants are in the business of providing information for pecuniary gain.  For example, Plaintiffs allege that "CHIME is a trade group that represents chief information officers and information technology professionals involved in providing information technology in healthcare settings."  (Compl. ¶ 23.)  Plaintiffs also allege that according to its marketing materials, CHIME "provides a highly interactive, trusted environment enabling senior professionals and industry leaders to collaborate, exchange best practices, address professional development needs and advocate the effective use of information management to improve the health and healthcare in the communities they serve."  (*Id*. ¶ 24.) One may reasonably infer from these allegations that CHIME serves its constituents in large part by providing information and otherwise fostering the exchange of information relating to healthcare technology.  The same goes for Defendant Innovation Trust, which was created by CHIME to promote the Challenge (*id*. ¶ 33), and Defendants Branzell and Fraidenburg, who are senior officers and agents of CHIME and Innovation Trust.  (*Id*. ¶¶ 6-13.)

Finally, the parties should not interpret our holding here as a definitive determination that Defendants are in the business of supplying information, such that they may be subject to liability for negligent misrepresentation.  Rather, we are only concluding that Plaintiff's negligent misrepresentation claim is plausible.  At the appropriate time, Defendants will have an opportunity to address whether they are actually in the business of supplying information.[8]

### E.     Illinois Consumer Fraud and Deceptive Practices Act (Count III)

Plaintiffs allege that Defendants violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505 ("Consumer Fraud Act").  Section 2 of the Consumer Fraud Act prohibits "deceptive acts or practices . . . or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . ."  815 Ill. Comp. Stat. 505 § 2.  In a private action, the plaintiff must demonstrate "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E.2d 801, 849-50 (Ill. 2005).

Although the language of the Act is broad, the Illinois Supreme Court has held that the Act only applies to a particular fraudulent transaction if the alleged transaction took place within Illinois.  *See id.* at 852-53.  "[A] fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state."  *Id.*  To determine whether a transaction occurred "primarily and substantially" within a state,

---

[8] There is also an open question regarding whether Defendants' alleged supply of information in this case gave rise to the cause of action.

courts in Illinois have examined, where applicable:  where a company policy was created; where a document was drafted; the residence of the plaintiff; the situs of the property at issue; contacts the plaintiff had to the state during the transaction; where the plaintiff was injured; the place of incorporation or place of business of the defendant; the law governing the transaction agreement; where the agreement was executed; where deceptive statements were made; where payments were sent; and where complaints were to be directed.  *See id.* at 853; *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012).

In addition, a business has a private right action under the Act only if the business is itself a consumer or has a "consumer nexus."  *See ATC Healthcare Servs. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D. Ill. 2016).  The Act defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."  815 Ill. Cons. Stat. 505 § 1(e).  In the alternative, a business has a "consumer nexus" if the defendant's conduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns."  *ATC Healthcare Servs.*, 192 F. Supp. 3d at 955.  To establish a sufficient consumer nexus, the defendant's trade practices must have involved a misrepresentation to the public.  *See Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010) (holding that plaintiff did not meet consumer nexus test because plaintiff did "not allege[] [that defendant] . . . made misrepresentations to the general public").

Defendants contend that Plaintiffs have not stated a claim under the Act because Defendants' alleged fraud did not take place "primarily and substantially" in Illinois.  (Mot. to Dismiss 8-10.)  Defendants also argue that Plaintiffs do not have the right to bring a private

22

action under the Act because they are not consumers and have not shown that they have a "consumer nexus."  (*Id.* at 10-11.)

With regard to Defendants' first argument, at the Motion to Dismiss stage, a court may not have all the relevant facts to determine whether the transaction occurred within Illinois. Courts in the Seventh Circuit have looked to whether the complaint, although it may not "*compel* a conclusion that Illinois law applies[,] . . . *defeat[s]* application of Illinois law." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (denying motion to dismiss where alleged facts establish transaction occurring both in-state and out-of-state) (emphasis in original); *Robinson v. DeVry Educ. Grp., Inc.*, No. 16 CV 7447, 2018 U.S. Dist. LEXIS 22360, at *11-12 (N.D. Ill. Feb. 12, 2018) (granting motion to dismiss where all facts indicated transaction occurred outside Illinois, except that defendant was headquartered in Illinois and concocted its scheme to defraud there); *Haught*, 2012 WL 3643831, at *4-5 (granting motion to dismiss where all facts indicated transaction occurred outside Illinois, except defendant was headquartered in Illinois and had agreement with Illinois choice-of-law clause).

In this case, the facts are insufficiently developed to compel a conclusion that Illinois law applies, but they are sufficiently developed such that we may conclude that they do not defeat application of Illinois law.  *See Morrison*, 649 F.3d at 538.  Although Plaintiffs reside in Pennsylvania and were injured in Pennsylvania, Defendants CHIME and Innovation Trust are Illinois non-profit corporations, the Competitor Agreement included an Illinois choice-of-law clause, and Defendants' website and fraudulent communications were publicly available to residents of Illinois.  A number of other relevant facts have yet to be determined.  For example, the Complaint does not establish where Plaintiffs accepted the Agreement, from where the first

23

prize was sent, and the location of other relevant communications and activities.  The parties will have an opportunity to develop these facts in discovery.

Defendants also argue that Plaintiffs do not have standing under the Consumer Fraud Act because they are neither consumers nor do they have a consumer nexus.  (Mot. to Dismiss 10-11.)  Plaintiffs argue that they meet the consumer nexus test because Defendants made misrepresentations to the market generally.  (Resp. 36-38.)  We agree.  *See Freedom Mortg. Corp.*, 720 F. Supp. 2d at 1004 (holding that plaintiff must allege that defendant made misrepresentation to general public in order to meet consumer nexus test).  Plaintiffs have sufficiently alleged that the Challenge was directed towards the public generally through the Challenge website, which is further demonstrated by the fact that members of the national and international public participated.  (Compl. ¶¶ 86, 158.)  Moreover, as discussed above, Plaintiffs allege with sufficient particularity that Defendants' administration of the Challenge and statements made throughout the Challenge involved a number of misrepresentations.  Therefore, Plaintiffs have sufficiently alleged a consumer nexus.

### F.       Illinois Prizes and Gifts Act (Count VI)

The Illinois Prizes and Gifts Act, 815 Ill. Comp. Stat. 525 ("Prizes Act"), requires a sponsor of a "written promotional offer" to disclose in the offer's materials a variety of items, including:  the name of the sponsor and its principal place of business; the retail value of each prize participants may receive; a disclosure that no purchase is necessary to enter into the offer; a disclosure that making a purchase will not improve a participant's chance of winning; a statement of a participant's odds of winning; any shipping or handling fees a participant will have to pay to acquire the prize; any restrictions to which receipt of the prize is subject; any limitations on eligibility; and, if a participant is among a limited group of persons with an

24

enhanced likelihood of receiving a prize, a statement of the maximum numbers of participants in that group.  *See* 815 Ill. Cons. Stat. 525 § 25.  The Act only applies to certain kinds of promotional offers, including those made to a person in Illinois or "used to induce or invite a person to contact, by any means a . . . sponsor . . ." in Illinois.  *Id.* § 15(1), (3).  Finally, the Act allows any "consumer who suffers loss by reason of any intentional violation of any provision of this Act" to bring an action to enforce that provision.  *Id.* at § 40.  The Act does not define "consumer."

Plaintiffs allege that CHIME and Innovation Trust, as "sponsors" of the Challenge, violated the Prizes Act because the Challenge materials did not include the disclosures required by § 25.  (Compl. ¶ 193.)  Defendants raise two arguments in favor of dismissing this claim.  First, Defendants argue that Plaintiffs do not allege facts sufficient to show that the Challenge was a written promotional offer made to a person in Illinois or used to induce Challenge participants to contact CHIME or Innovation Trust in Illinois.  (Mot. to Dismiss 8-9.)  Defendants add that CHIME's and Innovation Trust's principal places of business are in Michigan, so they are not "in" Illinois for the purposes of the Act.  (*Id.* at 8)  Second, Defendants argue that Plaintiffs cannot bring a private action under the Act because they do not fit the definition of "consumer."  (*Id.* at 10.)

With respect to Defendants' first argument, there is little case law discussing how courts should interpret whether an offer was made to a person in Illinois or used to induce a person to contact someone in Illinois.  815 Ill. Cons. Stat. 525 § 15(1), (3).  However, we are convinced that Plaintiffs have sufficiently plead facts demonstrating that the Challenge induced participants

25

to contact a person in Illinois.[9]  Defendants do not dispute that the Challenge invited participants to contact CHIME or Innovation Trust, and we can infer that such contact was encouraged through the requirement that participants submit proposals and prototypes to those organizations. Rather, the issue is whether the Challenge required participants to send their submissions and prototypes to CHIME and Innovation Trust *in Illinois.*

Defendants argue that courts have refused to apply Illinois statutes extraterritorially where the plaintiff was not an Illinois resident.  *See*, *e.g., Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (affirming dismissal of claim under Illinois Wage Payment and Collection Act where statute was designed to protect Illinois employees and plaintiff was not Illinois employee); *Huang v. Fluidmesh Networks, LLC*, No. 16-cv-9566, 2017 U.S. Dist. LEXIS 111608, at *15 (N.D. Ill. July 18, 2017) (dismissing claim under Illinois Whistleblower Act because alleged retaliation did not occur in Illinois and plaintiff lived elsewhere).  However, unlike the statutes in those cases, the Prizes Act specifically contemplates non-Illinois residents being lured to Illinois.  815 Ill. Cons. Stat. 525 § 15(3) ("[T]his Act applies only to a written promotional offer that is: . . . (3) used to induce or invite a person to contact by any means a . . .

_____

[9] We are unable to engage in an analysis regarding the first type of offer, those made to persons in the state of Illinois.  815 Ill. Cons. Stat. 525 § 15(1).  Although the plain language of the statute would seem to apply to blanket offers made to the public, including Illinois residents, the Illinois Supreme Court has held that statutes are not to apply outside of Illinois unless they expressly state so.  *See Avery*, 835 N.E.2d at 852 ("[A] 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" (citation omitted)).  Section 15(1) of the Prizes Act does not expressly state that it applies to blanket offers like the one in this case.  As we stated above, the Challenge was promulgated publicly, including to residents of Illinois, and included various misrepresentations.  Although the Illinois legislature certainly has an interest in regulating deceptive offers made to its citizens, *see* 815 Ill. Cons. Stat. 525 § 5 (stating that intent of Prizes Act is to address "deceptive promotional advertising of prizes"), it is unclear whether they intended to give non-resident plaintiffs the ability to enforce the Prizes Act against a deceptive nation-wide offer, as in this case.

sponsor . . . in this State.").  Because CHIME and Innovation Trust are Illinois organizations, and

they sponsored the Challenge, we conclude that Plaintiffs have plausibly alleged that CHIME

and Innovation Trust induced or invited Plaintiffs to contact them in Illinois.

Defendants' second argument is that Plaintiffs are not consumers for purposes of the

Prizes Act because they have not purchased a good or service from CHIME or Innovation Trust.

(Mot. to Dismiss 10.)  We acknowledge that the Prizes Act only allows "consumers" to bring a

private action, 815 Ill. Cons. Stat. 525 § 40(b).  The Prizes Act does not define the term

"consumer," but it would be contrary to the plain language of the Prizes Act to confine the term

to the narrow definition of one who has purchased a good or service, as Defendants suggest.  By

its own terms, the Act does not require a plaintiff to have made a purchase from the sponsor:  the

Act specifically requires sponsors to disclose that *no* purchase is necessary to participate in their

offer, and the Act prohibits sponsors from requiring a purchase.  *See* 815 Ill. Cons. Stat. 525 §

25; *id.* at § 20 ("No sponsor may require a person in this State to pay the sponsor money as a

condition of awarding the person a prize, or as a condition of allowing the person to receive, use,

compete for, or obtain information about a prize.").  Illinois case law also supports a broader

interpretation of "consumer."  Indeed, Illinois courts have allowed claims under the Prizes Act to

proceed as long as the plaintiff was a participant in the promotional offer.  *See*, *e.g., Volpe v.

Caribbean Cruise Line, Inc.*, No. 13 C 1646, 2013 U.S. Dist. LEXIS 98878 (N.D. Ill. July 16,

2013) (declining to dismiss claim brought by contest participant when participant called phone

number for free cruise); *Nelson v. Koenig*, No. 15-509, 2016 WL 4921717 (Ill. App. Sept. 14,

2016) (assessing claim of plaintiff who participated in sweepstakes challenge to win car from car

dealership, although she did not purchase car).  Therefore, although the Act gives a private right

of action only to "consumers," that section does not require the plaintiff to have actually

purchased a good or service from the sponsor.  Instead, the plaintiff only needs to have participated in the offer.  In this case, Plaintiffs allege that they participated in the Challenge. Plaintiffs have thus set forth a plausible claim for relief under the Prizes Act.

      **G.    Conversion (Count VII)**

      In this case, Plaintiffs allege that they are the rightful owners of the prototype, that they have repeatedly demanded return of the prototype, and that Defendants have refused to return it. (Compl. ¶¶ 197-200.)  Defendants argue that these allegations are mere legal conclusions and, to properly state a conversion claim, Plaintiffs must allege "when, how, or who actually 'repeatedly demanded return of the prototype' and 'refused to return the prototype.'"  (Mot. to Dismiss 15.)

      "Under Pennsylvania law, conversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification."  *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. 2011) (quoting *Universal Premium Acceptance Corp. v. York Bank & Trust Co*., 69 F.3d 695, 704 (3d Cir. 1995) (internal quotation marks omitted)).  "Where one lawfully comes into possession of a chattel, a conversion occurs if a demand for the chattel is made by the rightful owner and the other party refuses to deliver."  *Id.* (quoting *Prudential Ins. Co. of America v. Stella*, 994 F. Supp. 318, 323 (E.D. Pa. 1998)).

      Plaintiffs have alleged sufficient detail in support of their conversion claim.  *See*, *e.g.*, *Mason v. Threshman*, No. 3:12cv259, 2012 U.S. Dist. LEXIS 121093, at *2, 9 (M.D. Pa. Aug. 27, 2012) (holding conversion claim was sufficient where "Plaintiff repeatedly made demands for the jewelry" and "Defendant continually denied any knowledge of the jewelry"); *see also Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490, 518 (E.D. Pa. 2007) (denying motion to dismiss conversion claim where allegations did not allege "what assets were stolen and by whom

… and what assets were diverted and by whom" because a "claim for conversion does … not need to be plead with particularity").

### H.    Claims Against Defendants Branzell and Fraidenburg

Defendants argue that Plaintiffs' claims against Branzell and Fraidenburg should be dismissed because "the Complaint hardly alleges any conduct at all" with respect to those Defendants.  (Mot. to Dismiss 16.)  Plaintiffs counter that they specifically allege that Branzell and Fraidenburg are officers of the CHIME and Innovation Trust; developed, operated, and promoted the Challenge; and made some of the misrepresentations that gave rise to Plaintiffs' claims.  (Compl. ¶¶ 10-11, 14, 63, 66, 117-18, 120, 132-33.)

Given Plaintiffs' clear allegations regarding Branzell's and Fraidenburg's roles as key persons within CHIME and Innovation Trust, we read references in the Complaint to "Defendants" as inclusive of Branzell and Fraidenburg.  Defendants cite to *Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017) for their argument that each claim should be tied specifically to Branzell and Fraidenburg, but this case is unlike *Bartol*.  (Reply 12-13.)  In *Bartol*, the court dismissed the complaint for being a "shotgun complaint" because it named multiple defendants in each count, but failed to allege whether many of the defendants were present at the disputed event, whether plaintiff had ever interacted with them, or whether the various defendants had any knowledge of the subject events.  *Id.* at 860.  Here, Branzell's and Fraidenburg's ties to the Challenge are clear, as are the roles they played within CHIME and Innovation Trust in administering the Challenge and making the misrepresentations giving rise to Plaintiffs' claims.  Therefore, we reject Defendants' arguments on this point.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be denied.

An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**