**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PERSONAVERA, LLC and MICHAEL BRAITHWAITE, | |
| *Plaintiffs*, | |
| v. | Case No. 2:18-cv-00633-MAK |
| COLLEGE OF HEALTHCARE INFORMATION MANAGEMENT EXECUTIVES, CHIME HEALTHCARE INNOVATION TRUST, RUSSELL BRANZELL, and KEITH FRAIDENBURG, | Honorable Mark A. Kearney |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

LEGAL STANDARD FOR SUMMARY JUDGMENT ................................................ 4

ARGUMENT ................................................................................................................. 5

I.      Braithwaite Lacks Standing to Assert His Personal Damages ................................ 5

II.      Contract Terms Bar Personavera's Claims ............................................. 5

III.      HIT did not Breach its Contract with Personavera .................................. 6

IV.      There is No Evidence Supporting Personavera's Negligent Misrepresentation Claim ......................................................................... 8

V.      There is No Evidence Supporting Personavera's Fraud Claim ............................ 12

VI.      Personavera' Promissory Estoppel Claim Cannot Survive in the Presence of a Contract ........................................................................... 13

VII.      The Illinois Consumer Fraud Act Does Not Apply to Conduct with No Connection to Illinois ............................................................................ 14

VIII.      The Illinois Prizes and Gift Act Does Not Apply to the Challenge ..................... 18

IX.      The Gist of the Action Doctrine Bars Personavera's Conversion Claim ............. 21

X.      There is No Evidence Supporting Personavera's Claims Against Branzell and Fraidenburg .................................................................................. 22

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ann Arbor Softworks Liquidating Trust v. Ashton-Tate Corp.*
    CIVIL ACTION No. 90-0299, 1992 WL 27486, 1992 U.S. Dist. LEXIS
    1797 (E.D. Pa. Feb. 11, 1992) ............................................................................. 13

*Avery v. State Farm Mut. Auto. Ins. Co.*
    2016 Ill. 2d 100, 835 N.E. 2d 801 (Ill. 2005) ................................................... 15

*Basile v. H&R Block Inc.*
    563 Pa. 359 (2000) ............................................................................................. 5

*Blue Mt. Mushroom Co. v. Monterey Mushroom*
    246 F. Supp. 2d 394 (E.D. Pa. 2002) ............................................................... 14

*Bruno v. Erie Ins. Co.*
    630 Pa. 79 (2014) ............................................................................................. 11

*Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*
    654 Fed. App'x 80 (3d Cir. 2016) ............................................................... 12, 14

*Burton v. Teleflex Inc.*
    707 F.3d 417 (3d Cir. 2013) ............................................................................. 5

*Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*
    123 F. Supp. 2d 826 (E.D. Pa. 2000) ............................................................... 13

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ........................................................................................... 4

*Crouse v. Cyclops*
    560 Pa. 394 (2000) ........................................................................................... 14

*Dew-Becker v. Wu*
    2020 IL 124472 (2020) ..................................................................................... 20

*Downs v. Andrews*
    639 Fed. App'x 816 (3d Cir. 2016) ................................................................... 11

*Dur-Ite Co. v. Indus. Comm'n*
    394 Ill. 338 (1946) ........................................................................................... 15

*eToll, Inc. v. Elias/Savion Adver., Inc.*
    2002 PA Super 347 (2002) ........................................................................... 11, 22

*Flores v. United Airlines*
No. 18 C 6571, 2021 WL 843415, 2021 U.S. Dist. LEXIS 41130 (N.D. Ill.
Mar. 5, 2021) ................................................................................................... 16, 18

*Greer v. Advanced Equities Inc.*
2012 IL App. (1st) 112458 (2012) ................................................................. 9

*Hab Carriers, Inc. v. Arrow Truck Sales, Inc.*
Case No. 09 C 5200, 2011 WL 250401, 2011 U.S. Dist. LEXIS 7074
(N.D. Ill. Jan. 25, 2011) .................................................................................. 18

*HCB Contractors v. Liberty Place Hotel Assocs.*
539 PA 395 (1995) ........................................................................................... 10

*Inoff v. Craftex Mills, Inc.*
CIVIL ACTION NO. 06-3675, 2007 WL 4355385, 2007 U.S. Dist.
LEXIS 91552 (E.D. Pa. Dec. 11, 2007) ......................................................... 23

*Iversen Baking Co., Inc. v. Weston Foods, Ltd.*
874 F. Supp. 96 (E.D. Pa. Jan. 25, 1995) ...................................................... 14

*Jakimas v. Hoffman-LaRoche, Inc.*
485 F.3d 770 (3d Cir. 2007) ............................................................................ 5

*Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*
779 F. Supp. 2d 416 (E.D. Pa. 2011) ............................................................ 20

*KBZ Commc'ns. Inc. v. CBE Techs. LLC*
634 Fed. App'x 908 (3d Cir. 2015) ................................................................ 11

*KDH Elec. Sys. v. Curtis Tech. Ltd.*
826 F. Supp. 2d 782 (E.D. Pa. 2011) ................................................. 12, 17, 23

*Landau v. CNA Fin. Corp.*
381 Ill. App. 3d 61 (2008) ......................................................................... 17, 18

*Mack Industries, Ltd. v. Village of Dolton*
30 N.E.3d 518 (Ill. App. Ct. Mar. 31, 2015) ................................................. 7

*Maley v. John Hancock Mut. Life Ins. Co.*
609 F. Supp. 621 (E.D. Pa. 1985) .................................................................. 13

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*
475 U.S. 574 (1986) .......................................................................................... 4

*Morrison v. YTB Int'l, Inc.*
649 F.3d 533 (7th Cir. 2011) ........................................................................... 16

*Pasternack v. Klein*
 CIVIL ACTION No. 14-2275, 2017 WL 4642283, 2017 U.S. Dist. LEXIS
 171319 (E.D. Pa. Oct. 17, 2017)........................................................................ 7

*Pittsburgh Constr. Co. v. Griffith*
 2003 PA Super 374 (2003) ............................................................................. 22

*Rohfing v. Manor Care*
 172 F.R.D. 330 (N.D. Ill. 1997)...................................................................... 17

*Sgouros v. TransUnion Corp*
 No. 14 C 1850, 2016 WL 4398032, 2016 U.S. Dist. LEXIS 109730 (N.D.
 Ill. Aug. 18, 2016)........................................................................................... 17

*Shaw v. Hyatt Int'l Corp.*
 No. 05 C 2005, 2005 WL 3088438, 2005 U.S. Dist. LEXIS 28250 (N.D.
 Ill. Nov. 15, 2005)........................................................................................... 17

*Spokeo v. Robins*
 136 S. Ct. 1540 (2016)..................................................................................... 21

*Sunquest Info. Sys. V. Dean Witter Reynolds*
 40 F. Supp. 2d 644 (W.D. Pa. 1999)............................................................... 11

*Sylvester v. Beck*
 406 Pa. 607 (1962)............................................................................................. 5

*Tirapelli v. Advanced Equities, Inv.*
 351 Ill. App. 3d 450 (2004) ............................................................................... 9

*Toy v. Metro. Life Ins. Co.*
 593 Pa. 20 (2007)............................................................................................. 10

*Weisblatt v. Minn. Mut. Life Ins. Co.*
 4 F. Supp. 2d 371 (E.D. Pa. 1998) .................................................................. 10

*Weiss v. Nw. Broad., Inc.*
 140 F. Supp. 2d, 336 (D. Del. 2001)............................................................... 14

## **Statutes**

815 ILCS 502/2................................................................................................ 14

815 ILCS 525/1................................................................................................ 18

815 ILCS 525/10.............................................................................................. 20

815 ILCS 525/15.............................................................................................. 21

815 ILCS 525/25 ................................................................................................................ 19

815 ILCS 525/25(5) ......................................................................................................... 19

815 ILCS 525/5 .................................................................................................................. 18

815 ILCS 825/10 ............................................................................................................... 19

## **Other Authorities**

*Black's Law Dictionary* 224 (7th ed. 1999) .................................................................. 19

*Black's Law Dictionary* 311 (7th Ed. 1999) .............................................................. 20

## INTRODUCTION

Defendants College of Healthcare Information Management Executives ("CHIME"), CHIME Healthcare Innovation Trust ("HIT"), Russell Branzell, and Keith Fraidenburg (collectively "Defendants"), by and through their attorneys Williams Montgomery & John LTD and Flaster Greenberg PC, in support of their Motion for Summary Judgment state as follows:

Summary judgment should be granted in Defendants' favor because Plaintiffs, after fulsome discovery, have failed to adduce sufficient facts to support their allegations. This case, at its core, is a dispute about the contract governing HIT's Challenge to design a National Patient Identification ("NPID") solution. As the undisputed facts show, Personavera accepted the Challenge Agreement and entered the Challenge. The Challenge Agreement contained a cancellation provision, which HIT exercised. Plaintiffs have attempted to spin the NPID Challenge into an elaborate, multi-year scam (in which CHIME and HIT paid out tens of thousands of dollars in prizes and spent far more, with no return). But discovery has made it abundantly clear that the facts do not support Plaintiffs' allegations of fraud, bad faith cancellation, and misrepresentations, and, accordingly, summary judgment must be granted in favor of Defendants. The undisputed facts also dictate that Defendants are entitled to summary judgment on Plaintiffs' claims under Illinois consumer protection statutes, and on the claims against Defendants Branzell and Fraidenburg in their individual capacities.

## FACTUAL BACKGROUND

In 2015, HIT began promoting the CHIME NPID Challenge (the "Challenge") on the HeroX website. UMF ¶ 8.[1] The Challenge consisted of two rounds: the Concept Blitz Round and

---

[1] Citations to "UMF ¶ " are to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.

the Final Innovation Round. UMF ¶ 9.

Braithwaite registered for the Challenge by reviewing and accepting the "CHIME National Patient ID Challenge Competitor Agreement" ("Challenge Agreement"). UMF ¶ 12. Initially, Braithwaite purported to accept the Challenge Agreement and enter the Challenge as an individual. UMF ¶ 13. Braithwaite later testified under oath that he had in fact entered the Challenge on Personavera's behalf as Personavera's agent. UMF ¶ 14.

The Challenge Agreement provides, "In order to participate in the Challenge, [the contestant] must accept these terms, and therefore should take the time to understand them." App'x 090a. The agreement further states, "Once [the contestant] clicks 'Accept' . . . the Agreement shall be deemed a valid and binding agreement between [the contestant] and Healthcare Innovation Trust." *Id.*

Section 5 of the Challenge Agreement is labeled "Changes and Cancellation" and states:

> *Healthcare Innovation Trust reserves the right to make updates and/or make any changes to, or to modify the scope of the Challenge Guidelines and Challenge schedule at any time* during the Challenge. [Contestants] are responsible for regularly reviewing the Challenge site to ensure they are meeting all rules and requirements of and schedule for the Challenge. *Healthcare Innovation Trust has the right to cancel the Challenge at any time, without warning or explanation, and to subsequently remove the Prize completely*."

*Id.* 092a (emphasis added). Section 6 of the Challenge Agreement is labeled "General Conditions" and provides:

> "The parties agree that *the Agreement* shall be governed by and interpreted in accordance with the laws of the State of Illinois, without giving effect to the choice of law rules thereof. *The Agreement, together with the Challenge Guidelines, constitutes the final, complete and exclusive statement of the agreement* of the parties relative to the subject matter hereof and *supersedes all previous or contemporaneous oral and written proposals*, negotiations, representations or understandings concerning such subject matter. The Agreement may be modified only pursuant to a writing executed by an officer of both parties. The parties expressly disclaim the right to claim the enforceability or effectiveness of any oral modifications to the Agreement or any amendments based on course of dealing, waiver, reliance, estoppel or other similar legal theory."

2

*Id.* 092a-093a (emphasis added).

Thereafter, on June 1, 2016, Personavera's submission was selected as a winning submission to the Concept Blitz Round and awarded a $30,000 prize. UMF ¶ 17. At Braithwaite's instruction, HIT paid the prize to Personavera. UMF ¶ 17. Also on or around June 1, 2016, HIT posted updated Guidelines on the HeroX website. UMF ¶ 18.

Personavera participated in and submitted materials to the Final Innovation Round. UMF ¶ 19. On May 15, 2017, Personavera was selected, as one of four finalists, to participate in Phase II of the Final Innovation Round, which consisted of Prototype Testing Phase I and Prototype Testing Phase II. UMF ¶ 20. In order to participate in the Prototype Testing Phases, Braithwaite executed the Challenge's Prototype Testing Agreement in his capacity as CEO of Personavera. UMF ¶ 22, 23. The Prototype Testing Agreement states that "I will not hold…HIT (or any of its affiliates), or Test Partner, judges, consultants or subject matter experts assisting in the NPID Challenge responsible for…their acts or omissions in connection with the NPID Challenge." UMF ¶ 24.

The Prototype Testing Agreement also states that "HIT has made itself available to answer questions from Innovators, and my questions relative to the Prototype Testing Round of the NPID Challenge, including my questions regarding the Prototype Testing Guidelines and the submission of my Prototype, have been answered." UMF ¶ 25. Braithwaite later testified that he did not believe this statement to be true, but nonetheless affirmed it to "stay in the contest." *Id.*

Modulus, a third-party, was engaged to serve as a "Testing Partner" and developed testing protocols for the Prototypes. UMF ¶ 27. Personavera submitted its prototype by shipping it to Modulus's testing facility in California. *Id.* Personavera's prototype did not have all of the

functionality described in Personavera's written submission to the Challenge, and when received by Modulus was emitting sparks. *Id*.

None of the prototypes, including Personavera's, satisfied the Phase I prototype testing criteria. UMF ¶ 28. Accordingly, on November 15, 2017, HIT announced on the HeroX website that the Challenge would be suspended. UMF ¶ 29. Accordingly, HIT ended the Challenge and did not award the $1 million prize. *Id*.

Following the end of the Challenge, Braithwaite requested the return of the prototype Personavera had submitted. UMF ¶ 30. HIT engaged in discussions with Braithwaite regarding the treatment, preservation, and shipping of the prototype, and returned the prototype to Personavera on or about April 11, 2018. *Id*.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment must be granted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of identifying evidence which shows that there is no genuine issue of material fact, that is, that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*475 U.S. 574, 587 (1986). The moving party may also establish that summary judgment must be granted in its favor through the absence of evidence of a material fact. *Celotex*, 477 U.S. at 322-23. Once this burden has been met, the non-moving party may only preserve its claim by setting forth "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the

jury could reasonably find for the [non-moving party].'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 425

(3d Cir. 2013) (quoting *Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)).

## ARGUMENT

### I.    **Braithwaite Lacks Standing to Assert His Personal Damages**

Braithwaite lacks standing to claim damages for losses he allegedly suffered personally, as

the undisputed facts show that he did not enter the Challenge as an individual. Braithwaite has

repeatedly affirmed under oath that when he registered for the Challenge and accepted the

Challenge Agreement, he did so on Personavera's behalf, and as Personavera's agent. UMF ¶¶ 12,

14. As a matter of law, "[a]n agent who makes a contract on behalf of a principal cannot maintain

an action thereon in his own name on behalf of the principal although authorized by the principal

to bring suit." Restatement 2d of Agency, § 363.[2] Likewise, "[a] servant or other agent has no

action of tort because another has tortiously harmed the principal or destroyed his business, unless

the other acted for the purpose of harming the agent's interests." Restatement 2d of Agency, §

374(2). Since Braithwaite acted solely as Personavera's agent throughout the Challenge, he lacks

standing to assert any claims for damages he personally suffered either in tort or in contract,

including compensation for time expended on the Challenge. Since Personavera was the true

entrant in the Challenge, it is the only real party in interest, and summary judgment should be

entered against Braithwaite on all claims asserted in his individual capacity.

### II.    **Contract Terms Bar Personavera's Claims**

Personavera's acceptance of the Challenge Agreement was required to participate in the

Challenge, App'x 090a ("In order to participate in the Challenge, Innovator must accept these

---

[2] Pennsylvania courts generally follow the Restatement (Second) of Agency. *See, e.g.*, *Basile v. H&R Block Inc.*, 563 Pa. 359 (2000); *Sylvester v. Beck*, 406 Pa. 607 (1962).

5

terms."), and the terms of the Challenge Agreement bar Plaintiffs' claims. The Challenge Agreement states that "Innovator is responsible for any costs incurred by Innovator in preparing or submitting the Submission." App'x 092a. To allow Personavera to mulct Defendants for those costs is contrary to that express contract term. Also, the Challenge Agreement allows HIT "to cancel the Challenge at any time, without warning or explanation, and to subsequently remove the Prize completely." *Id*. HIT could not have breached the contract by exercising a power expressly granted under that contract. These provisions clearly negate Plaintiffs' claims for breach of contract and damages.

Additionally the Prototype Testing Agreement states that the signatory (i.e. Braithwaite, as Personavera's CEO) "will not hold CHIME HIT (or any of its affiliates) . . . responsible for the test results or their acts or omissions in connection with the NPID Challenge." UMF ¶ 24. CHIME is an affiliate of HIT, and Defendants Branzell and Fraidenburg are officers of CHIME. Accordingly, the express terms of the Prototype Testing Agreement bar Plaintiffs' claims against Defendants.

### III.     HIT did not Breach its Contract with Personavera

As a preliminary matter, Plaintiffs' allegations that the "Final Innovation Round Guidelines" constitute a separate and independent contract from the Challenge Agreement, *see* Plaintiff's Second Amended Civil Action Complaint ("Complaint"), ECF No. 29, at ¶¶ 148-54, are not in accord with the facts. Indeed, Plaintiffs acknowledged as much in their Memorandum of Law in Opposition to Defendants' Motion to Dismiss. *See* ECF No. 15-1 at 18 ("The Final Innovation Round Guidelines and the [Challenge] Agreement constitute an offer to enter a unilateral contract."). The fact is that the contract at issue in this case is the Challenge Agreement, which incorporates the Guidelines, as modified from time to time, and posted on the HeroX website. App'x 090a, 092a.

The Challenge Agreement contains an Illinois choice-of-law provision. App'x 092a However, since Illinois law and Pennsylvania law are in agreement on what constitutes a breach of contract, a choice of law analysis is unnecessary. *Pasternack v. Klein*, CIVIL ACTION No. 14-2275, 2017 WL 4642283, 2017 U.S. Dist. LEXIS 171319, at *4 (E.D. Pa. Oct. 17, 2017) ("Where the laws do not differ, there is no conflict, and a choice of law analysis is unnecessary."). Breach of contract requires that a plaintiff establish "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Mack Industries, Ltd. v. Village of Dolton,* 2015 IL App (1st) 133620, ¶ 29 (2015).

There is no genuine dispute that Personavera failed to perform under the Challenge Agreement, and, indeed, materially breached the Challenge Agreement. An entity accepting the Challenge Agreement (an "Innovator") warranted that "[a]ll information provided by Innovator regarding Innovator and, if applicable, its business, experience and capabilities ("Innovator Information") is true, accurate, current, and complete information and Innovator will maintain and update the Innovator Information to keep it true, accurate, current and complete." App'x 090a (emphasis omitted). Braithwaite submitted a Competitor Fact Sheet stating that he was making the submission as an individual. UMF ¶ 13. Later, however, Braithwaite testified that he in fact entered and participated in the Challenge as an agent for Personavera, not as an individual. UMF ¶ 14. It is undisputed that Personavera represented via the Challenge Agreement that it had "all the rights, licenses, permissions, and consents necessary to submit the Submission." UMF ¶ 16. But Braithwaite testified that Personavera in fact did *not* have all the rights, licenses, and permissions necessary. *Id.* Finally, Braithwaite testified that he, as Personavera's CEO, falsely signed the Prototype Testing Agreement, certifying that "HIT has made itself available to answer questions

from Innovators, and my questions relative to the Prototype Testing Round of the NPID Challenge, including my questions regarding the Prototype Testing Guidelines and the submission of my Prototype, have been answered" despite not believing the statement to be true. UMF ¶ 25. Personavera's repeated submission of untruthful and incomplete information to HIT materially violated the Challenge Agreement.

Additionally, there is no dispute that each of the four finalists (including Personavera) was required to submit a working prototype in Phase II of the Final Innovation Round to be eligible for the prize. UMF ¶ 21. However, Personavera's prototype did not have all of the functionality described in its written submissions, was not functional when received for testing, and did not satisfy the testing criteria. UMF ¶¶ 27, 28. By failing to submit a working prototype with the functionality described in the written submissions, Personavera failed to provide the full performance necessary to sustain an action for breach of contract.

Even if Personavera had fully performed, Plaintiffs have not adduced facts showing that CHIME's exercise of the cancellation clause was contrary to the implied covenant of good faith and fair dealing. No facts have been adduced supporting the allegations that Defendants imposed secret conditions, such as the resolution of "funding, timing, or regulatory issues" on the Challenge. *See* Memorandum, ECF No. 25 at 14. Nor have any facts been adduced to allow the inference that HIT "cancelled the Challenge solely to avoid its obligations." *Id*. at 13. While Plaintiffs' bare allegations were enough to survive Defendants' Rule 12(b)(6) motion to dismiss, without factual support the claim cannot withstand a Rule 56 motion for summary judgment.

### IV.   There is No Evidence Supporting Personavera's Negligent Misrepresentation Claim

Personavera's claim of negligent misrepresentation is barred by the non-reliance provision in the Challenge Agreement. By accepting the Challenge Agreement, an Innovator agreed that the

"[Challenge] Agreement, together with the Challenge Guidelines, constitutes the final, complete and exclusive statement of the agreement of the parties relative to the subject matter hereof and supersedes all previous or contemporaneous oral and written proposals, negotiations, representations or understandings concerning such subject matter. The Agreement may be modified only pursuant to a writing executed by and officer of both parties. The parties expressly disclaim any right to claim the enforceability or effectiveness of any oral modifications to the Agreement or any amendments based on course of dealing, waiver, reliance, estoppel or similar legal theory." App'x 091a-92a.

Thus, the Challenge Agreement contains an unambiguous disclaimer of reliance on prior or contemporaneous oral and written representations, disclaims oral modification or amendment based on reliance, and explicitly states that it constitutes the "final, complete, and exclusive statement of the parties relative to the subject matter hereof" (i.e. the Challenge). *Id.* 92a. Personavera cannot sidestep the undisputed fact that its agent, Braithwaite, agreed to these terms.

The Challenge Agreement is governed by Illinois law, App'x 091a, and Illinois law is clear on this point: "if a nonreliance clause disclaims reliance on oral representations, then a plaintiff may not claim justifiable reliance on them." *Greer v. Advanced Equities Inc.*, 2012 IL App. (1st) 112458, ¶ 12 (2012). Where a nonreliance clause applies, reliance is not reasonable as a matter of law. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 458 (2004). For Personavera to contend that it accepted the Challenge Agreement yet still relied on statements outside of the four corners of the contract in participating in the Challenge is per se unreasonable, and the Court should grant summary judgment for this reason.

Applying Pennsylvania law results in the same outcome, though by a different route. In Pennsylvania, the elements of a claim of negligent misrepresentation are: "(1) a misrepresentation

of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 377 (E.D. Pa. 1998).

The above cited language from the Challenge Agreement constitutes an integration clause. Where an integration clause exists, the parol evidence rule operates to bar allegedly false oral misrepresentations on a subject specifically dealt with by the agreement, unless the allegedly false statements were omitted from the agreement by fraud, accident, or mistake. *HCB Contractors v. Liberty Place Hotel Assocs.*, 539 Pa. 395, 398-99 (1995). In other words, Pennsylvania courts limit the exception to fraud in the execution of a contract, and do not allow the exception when fraud in the inducement is alleged. *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 50 (2007).

Personavera claims that Defendants' allegedly false statements "cause[d] Plaintiffs to enter the Challenge and continue to participate" and that in reliance on those statements "Plaintiffs entered and continued to participate in the Challenge." There is no dispute that entering and participating in the Challenge required agreeing to the Challenge Agreement. Therefore, Personavera's fraud claim, even though it is not styled as such, is essentially a claim for fraudulent inducement. Moreover, the specific subject matter of the statements Personavera's claim to be false is precisely the subject matter covered by the Challenge Agreement and the incorporated Guidelines: the prize to be awarded, the conditions and judging of the Challenge, and the timeline of the Challenge.

Personavera's fraudulent misrepresentation claim is also barred by Pennsylvania's "gist of the action" doctrine, which provides that "tort claims cannot be maintained when they essentially duplicate an action for breach of an underlying contract." *Sunquest Info. Sys. v. Dean Witter Reynolds*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). "[A] tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." *Id*. The gist of the action doctrine is intended to "maintain[] the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 2002 PA Super 347, ¶ 14 (2002). Most recently, the Pennsylvania Supreme Court has stated the "critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached." *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 111 (2014). Where a "duty breached is one created by the parties by the terms of their contract," the gist of the action doctrine applies to bar a tort claim. *Id*. at 112. In short, "to determine whether an action is barred by the gist of the action doctrine, [a court] must examine the factual allegations and ask '[w]hat's this case really about?'" *Downs v. Andrews*, 639 Fed. App'x 816, 819 (3d Cir. 2016) (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010)).

Here, the case is about Defendants' cancellation of the Challenge pursuant to the Challenge Agreement. Personavera's claims that Defendants made various statements misrepresenting facts are no more than chaff deployed to distract. Had HIT awarded the prize to any one of the finalists, Personavera would have no claim whatsoever. Like in *Downs*, "regardless of Plaintiffs' assertions about why [alleged contractual promises were not fulfilled], the crux of the action is that Defendants failed [to perform an alleged contractual duty]." 639 Fed. App'x at 820; *see also KBZ Commc'ns. Inc. v. CBE Techs. LLC*, 634 Fed. App'x 908, 911 (3d Cir. 2015) (noting also that the "[plaintiff's] alleged 'tort' damages are exactly the same as its contract damages"); *Bull Int'l, Inc.*

*v. MTD Consumer Grp., Inc.*, 654 Fed. App'x 80, 103 (3d Cir. 2016) (gist of the action doctrine applies where a tort is "wholly dependent" on a wrongful termination).

Finally, Personavera's negligent misrepresentation claim must fail because (i) specific statements Personavera identifies are not representations of existing fact, and (ii) Personavera has not adduced any facts showing that statements were false when made. *See* App'x 70a, 82a-88a. Personavera has not and cannot point to any facts proving that CHIME did not or could not guarantee the $1 million prize, which is the sole existing fact Personavera alleges was misrepresented by Defendants. Statements conveying Guidelines, or timeframes, or making prospective statements regarding the operation of the Challenge, were not false when made—those statements are simply not representations of existing fact. And general statements of confidence in the Challenge and its importance, and encouragement to Innovators, are non-actionable puffery. *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 803 (E.D. Pa. 2011). Where no material fact is misrepresented, a claim for negligent misrepresentation cannot survive. The Court should accordingly grant summary judgment of Personavera's claim of negligent misrepresentation.

## V.     There is No Evidence Supporting Personavera's Fraud Claim

For the reasons explained in the context of Personavera's negligent misrepresentation claim, under Illinois law and based on the nonreliance clause in the Challenge Agreement, Personavera's reliance on statements made outside of the contract is per se unreasonable and Personavera's claim of fraud must fail.

To the extent Pennsylvania law applies, the Court should grant summary judgment on Personavera's fraud claim based on the "gist of the action" for the same reasons as explained in the context of the negligent misrepresentation claim. Personavera's fraud claim is based on essentially the same allegations as its negligent misrepresentation claim, and is likewise "about" Defendants' cancellation of the Challenge, not independent fraudulent conduct. Where a fraud

alleged turns on duties "created by and grounded in [a contract]," and "the sufficiency of [the] defendant's performance," a "plaintiff's fraud claim merely duplicates a breach of contract claim and must be dismissed." *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000).

Alternatively, the Court should grant summary judgment due to Personavera's failure to adduce sufficient evidence to meet the elevated standard of proof for a fraud claim. A claim for fraudulent misrepresentation under Pennsylvania law requires: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result." *Ann Arbor Softworks Liquidating Trust v. Ashton-Tate Corp.*, CIVIL ACTION No. 90-0299, 1992 WL 27486, 1992 U.S. Dist. LEXIS 1797, at *24 (E.D. Pa. Feb. 11, 1992). Unlike negligent misrepresentation, which requires only a preponderance of the evidence, "[f]raud must be proved by clear, precise and convincing evidence." *Id*. "'Clear, precise and convincing evidence is evidence such as to enable the finder of fact to conclude, without hesitation, that the facts alleged are true.'" *Id*. at 25 (quoting *Maley v. John Hancock Mut. Life Ins. Co.*, 609 F. Supp. 621, 625 (E.D. Pa. 1985)). A court must determine that the evidence meets this standard as a matter of law before the issue is submitted to a jury. *Id*. Personavera has not adduced facts sufficiently convincing to meet this elevated standard. Among other reasons, explained elsewhere, the statements Personavera relies on are, by and large, not representations of existing fact. For this independent reason, the Court should grant summary judgment on Personavera's fraud claim.

VI.     **Personavera' Promissory Estoppel Claim Cannot Survive in the Presence of a Contract**

Pennsylvania law applies to the promissory estoppel claim because the claim does not arise from the Challenge Agreement and the Guidelines. *See Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 Fed. App'x 80, 100 n.13 (3d Cir. 2016). The elements of a promissory estoppel claim in Pennsylvania are: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee, (2) the promisee actually took action or refrained from taking action in reliance on the promise, and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops*, 560 Pa. 394, 403 (2000). Under Pennsylvania law, promissory estoppel and breach of contract may be pleaded in the alternative, but if a contract exists, the promissory estoppel claim must fail. *Iversen Baking Co., Inc. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. Jan. 25, 1995). Even if contract-based claims and promissory estoppel are initially pleaded in the alternative, summary judgment is the time for a plaintiff to commit to a theory of the case. *See Blue Mt. Mushroom Co. v. Monterey Mushroom*, 246 F. Supp. 2d 394, 407-08 (E.D. Pa. 2002); *Weiss v. Nw. Broad., Inc.*, 140 F. Supp. 2d 336, 345 (D. Del. 2001). It is undisputed that Personavera accepted the Challenge Agreement and entered the Challenge. UMF ¶¶ 12, 14. There is a valid and binding agreement that covers the subject matter of Personavera's claims, and therefore a promissory estoppel claim cannot stand. Additionally, the Challenge Agreement contains an explicit integration provision that renders reliance on any statements outside the contract unreasonable. For both of these reasons, the Court should grant summary judgment on Personavera's promissory estoppel claim.

### VII.   The Illinois Consumer Fraud Act Does Not Apply to Conduct with No Connection to Illinois

The Illinois Consumer Fraud Act ("CFA") prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. 815 ILCS 502/2. Illinois statutes are presumed to not apply extraterritorially "unless a clear intent in this respect appears from the express provisions of the

statute." *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350 (1946). The Illinois Supreme Court has conclusively held that no such clear intent is expressed in the CFA, and it therefore does not have extraterritorial application. *Avery v. State Farm Mut. Auto. Ins. Co.*, 2016 Ill. 2d 100, 185, 835 N.E. 2d 801 (Ill. 2005).

The CFA therefore does not apply to fraudulent transactions which take place outside Illinois. *Avery*, 2016 Ill. 2d at 185. Admitting that it can be difficult to determine the situs of a consumer transaction, *Avery*, 2016 Ill. 2d at 185, the Illinois Supreme Court developed a formula for determining when the CFA applies. Where "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois" a private action may be maintained under the CFA. *Avery*, 2016 Ill. 2d at 187. The "primarily and substantially" test is not a bright line rule and must be determined from the facts of each case. *Avery*, 2016 Ill. 2d at 187.

The undisputed facts of this case do not describe a transaction occurring "primarily and substantially" in Illinois. Personavera is an LLC with its primary place of business in Pennsylvania, and all members are residents of Pennsylvania. UMF ¶ 1. Braithwaite is a resident of Pennsylvania and does not live in Illinois. UMF ¶¶ 2, 15. Braithwaite testified that he did not travel to Illinois in connection with the Challenge, and "likely" did not communicate with anyone in Illinois in connection with the Challenge. UMF ¶ 15. His "point of contact" regarding the Challenge was a person located in Pennsylvania. *Id* CHIME and HIT, while incorporated in Illinois, are headquartered in Michigan. UMF ¶¶ 3, 4. CHIME does not currently have any offices in Illinois and did not have any such offices during the Challenge. UMF ¶ 11. CHIME also does not own any tangible property located in Illinois. *Id*. Defendants Branzell and Fraidenburg are residents of Florida and Michigan, respectively. UMF ¶¶ 5, 6. There is no evidence whatsoever that either conducted any CHIME or HIT business from Illinois. There is no evidence that any Challenge

materials were created in Illinois. There is no evidence that HeroX has or had any connection to Illinois. There is no evidence that Modulus has or had any connection to Illinois There is no evidence that CHIME or HIT own real property in Illinois. There is no evidence that Personavera's prototype was ever kept in Illinois. There is no evidence that any of Personavera's alleged damages occurred in Illinois.

Personavera's evidence that the transaction occurred "primarily and substantially" in Illinois rests on three thin reeds: (1) CHIME and HIT are incorporated in Illinois; (2) the Challenge Agreement has an Illinois choice of law provision; and (3) CHIME director of communications Matthew Weinstock resided in Illinois during the Challenge and may have posted some statements on the HeroX forum from Illinois. [3] These facts come nowhere close to satisfying the test for invoking the CFA. Indeed, "the facts that a defendant is headquartered in Illinois, that the fraudulent scheme emanated from Illinois and/or that a website was designed in Illinois do not suffice to establish that a transaction occurred primarily and substantially in Illinois." *Flores v. United Airlines,* No. 18 C 6571, 2021 WL 843415, 2021 U.S. Dist. LEXIS 41130, at \*17-19 (N.D. Ill. Mar. 5, 2021).

Nor does an Illinois choice-of-law provision dictate application of the CFA. *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011). This result is a logical extension of the "primarily and substantially" test, as the fact that the parties agreed to resolve any disputes through

---

[3] Personavera has also noted that a small number of individuals who registered for the Challenge list Illinois addresses. The fact that some Illinois residents may have entered the Challenge is irrelevant to the determination of extraterritorial application under *Avery* for the purpose of Personavera's claims. As the *Avery* court makes clear, the relevant inquiry in a private action brought under the CFA is whether the disputed transactions involving a given plaintiff took place primarily and substantially in Illinois, not whether third parties were located in Illinois. *Avery*, 2016 Ill. 2d at 190 (holding that out-of-state plaintiffs had no claim under the CFA but proceeding to evaluate the merits of an in-state plaintiff's claim). The "primarily and substantially" test does not turn on where disputed practices were directed, but rather on where the transactions specific to the plaintiff bringing the action actually occurred.

Illinois law does not bear in any way as to whether allegedly fraudulent actions occurred in Illinois. *Shaw v. Hyatt Int'l Corp.*, No. 05 C 2005, 2005 WL 3088438, 2005 U.S. Dist. LEXIS 28250, at *7 (N.D. Ill. Nov. 15, 2005). Similarly, courts have consistently held that even where corporate headquarters are physically located in Illinois, and the allegedly fraudulent policies and practices emanate from that headquarters, the CFA does not apply if the plaintiff resides and engages with those policies and practices elsewhere. *Sgouros v. TransUnion Corp*, No. 14 C 1850, 2016 WL 4398032, 2016 U.S. Dist. LEXIS 109730, at *15-16 (N.D. Ill. Aug. 18, 2016) (rejecting CFA claim where Defendants were headquartered in Illinois and where an Illinois choice-of-law provision existed); *Rohfing v. Manor Care*, 172 F.R.D. 330 (N.D. Ill. 1997) (rejecting CFA claim for lack of Illinois connection where defendant was headquartered in Illinois).

Regarding the statements identified as fraudulent by Personavera and attributed to Mr. Weinstock, five are general posts providing updates about the timeline of the Challenge. *See* App'x 087a-88a; 911a-13a; 916a-18a. Personavera cannot adduce any evidence that the information contained in those statements was false. As to the remaining two, *id*. at 085a-86a, both statements contain no factual statements whatsoever, and are mere puffery and cannot support a claim of fraud. *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 803 (E.D. Pa. 2011). Moreover, it is undisputed that Braithwaite "likely did not" communicate with anyone in Illinois. UMF ¶ 15.

Courts have held that transactions with a similar or stronger connection to Illinois than the ones at issue here do not meet the "primarily and substantially" test. For example, in *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61 (2008), the plaintiff, a Pennsylvania resident bought insurance in her home state. Her contacts with the seller occurred in Pennsylvania, and notifications about changes to her policy were made from states other than Illinois. *Id*. at 64. The defendant not only created allegedly deceptive marketing materials in Illinois, but was in fact headquartered in

Illinois. *Id*. at 62. The court nevertheless affirmed the lower court's finding on a motion to dismiss that these facts did not describe a transaction occurring "primarily and substantially" in Illinois. *Id*. at 65.

In *Hab Carriers, Inc. v. Arrow Truck Sales, Inc.*, Case No. 09 C 5200, 2011 WL 250401, 2011 U.S. Dist. LEXIS 7074 (N.D. Ill. Jan. 25, 2011), the plaintiff was an Illinois company whose employee, an Illinois resident, communicated with the defendants from Illinois. *Id*. at *17. Despite these Illinois connections, the court granted summary judgment in the defendants' favor because "the overwhelming majority of the circumstances relating to the transaction took place outside of Illinois." *Id*. at *17, *21.

Like in *Landau*, *Hab*, and *Flores*, the allegedly fraudulent statements made by Defendants were not received in Illinois but rather in Pennsylvania, where Braithwaite lives and where Personavera is located. Direct communications between Personavera and Defendants were between individuals in Michigan, Florida, and Pennsylvania, and in any case not in Illinois. The undisputed material facts overwhelmingly show that the disputed transaction in this case did not occur primarily and substantially in Illinois, and, accordingly, summary judgment should be granted in favor of Defendants on Plaintiffs' CFA claim.

## VIII.   <u>The Illinois Prizes and Gift Act Does Not Apply to the Challenge</u>

Personavera alleges that the Challenge violated The Illinois Prizes and Gifts Act ("PGA"), 815 ILCS 525/1 *et seq.*, by failing to contain certain disclosures. Compl. ¶¶ 193-94. While there is very little case law applying the PGA, the statute itself provides ample indication that summary judgment should be granted on this count. The PGA is directed at the "deceptive promotional advertising of prizes," 815 ILCS 525/5, and defines "prize" as "a gift, award, or other item or service of value that is offered or awarded to a participant in a real or purported contest, competition, sweepstakes, scheme, plan, or other selection process that involves an element of

chance." 815 ILCS 825/10. *Black's Law Dictionary* defines "chance" as "1. A hazard or risk. 2. The unforeseen, uncontrollable, or unintended consequences of an act. 3. An accident." *Black's Law Dictionary* 224 (7th ed. 1999).

The PGA requires that certain written disclosures be made in connection with any "written promotional prize offer." 815 ILCS 525/25. Personavera alleges that the Challenge involved an element of chance, but the Challenge was unquestionably a contest of merit and skill. The Challenge Agreement clearly states that a winning solution is not to be picked at random but instead must meet the criteria and be selected by the judges. App'x at 090a. The choice of winner would be the product of careful consideration and the merit of the qualifying entrants, not the unthinking operation of chance. The only role that chance might play is as an alternative dispute resolution provision that was never invoked. *See* App'x 091a ("If an innovator's entry is the same or similar to the submission of another innovator [sic], [HIT] and its judges reserve the right, at their sole discretion, to score one Submission higher than the other or randomly select a Submission from similarly-situated submissions"); App'x 094a ("I further understand that if my Prototype is the same or similar to the Prototype of another Innovator, CHIME HIT and its judges reserve the right, at their sole discretion, to score one Prototype higher than the other or randomly select a Prototype from similarly-situated submissions."). [4]

While no court has considered whether an optional method for resolving a tie constitutes an "element of chance" for the purposes of the PGA, it is plainly apparent that Illinois courts would

---

[4] The importance that an element of chance be present in the promotional contests to which the PGA applies is emphasized in the very disclosures on which Personavera bases its claim. One of the required disclosures is "a statement of the person's odds of receiving each prize identified in the notice." 815 ILCS 525/25(5). It is patently apparent that any statement of odds in a skill and merit competition like this one would be utter nonsense. Where success is the result of the quality of the submission, whether the submission meets certain criteria, and the evaluation of a judging panel, and where the contest is open to any number of registered entrants, the odds for any given entry's success are incalculable.

reject such an argument. In a recent case involving sports betting, the Illinois Supreme Court adopted the "predominate factor" test for "determining whether a contest is one of skill or chance. *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 25 (2020). Under this test, "contests in which the outcome is mathematically more likely to be determined by skill than chance" are considered to be "bona fide contest[s] for the determination of skill," rather than gambling. *Id*. at ¶¶ 21-22. Notably, the court rejected the "any chance" test as being "essentially no test at all, as every contest involves some degree of chance." *Id*. at ¶ 25. If called upon to construe the PGA, it is likely that Illinois courts will follow a similar rationale and reject the application of the PGA to contests like the Challenge, where skill so greatly predominates over any element of chance.

Additionally, Personavera may not assert a claim under the PGA because it is not a consumer. While "consumer" is not a defined term in the statute, *Black's Law Dictionary* defines a "consumer" as "[a] person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." *Black's Law Dictionary* 311 (7th Ed. 1999); *see Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, 779 F. Supp. 2d 416, 432-33 (E.D. Pa. 2011) (construing the term "ultimate consumer" to mean one who "(1) buys goods for personal, family, or household use, without any intention to (2) resell the goods or (3) use those goods in the manufacture of other goods for sale"). Personavera does not buy goods or services for personal, family, or household use, nor is it a natural person. Moreover, while Braithwaite, as a natural person, may be a consumer in the most general sense, there are no facts showing that he is a consumer of any good or service produced by CHIME or HIT, or that CHIME, in running the Challenge, intended to "promote or advertise goods, services or property" to Braithwaite. *See* 815 ILCS 525/10.

Moreover, the PGA simply does not apply to the Challenge. It's application is limited to "a written promotional offer that is: (1) made to a person in [Illinois]; (2) used to induce or invite a person to come to [Illinois] to claim a prize, attend a sales presentation, meet a promoter, sponsor, salesperson, or agent, or conduct any business in [Illinois]; or (3) used to induce or invite a person to contact by any means a promoter, sponsor, salesperson, or agent in [Illinois]." 815 ILCS 525/15. Personavera was not located in and did not conduct business in Illinois, and Braithwaite did not travel to or conduct business in Illinois during the Challenge. Based on the undisputed facts, and as explained in detail elsewhere, Defendants did not have any meaningful presence in Illinois such that the Challenge can be said to have "induce[d] or invite[d]" Personavera to contact CHIME or HIT in Illinois. Therefore, the PGA does not apply and the Court should grant summary judgment in favor of Defendants.

Finally, Personavera has not adduced any facts showing that it was harmed by the lack of disclosures in such a manner as to establish Article III standing. It is not enough to for a plaintiff to baldly assert that they have been injured by a "bare procedural violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). They must have suffered a "concrete" harm, however difficult that may be to measure. *Id*. Personavera offers no facts or even allegations indicating that, had Defendants made the disclosures contemplated by the PGA, Personavera would not have entered the Challenge or in any way acted differently, thereby suffering harm. The undisputed facts show the opposite, as Braithwaite testified that he made false statements for the purpose of staying in the Challenge. UMF ¶ 25. Therefore, the Court should enter summary judgment in Defendants' favor on Personavera's PGA claim for that reason as well.

## IX.     <u>The Gist of the Action Doctrine Bars Personavera's Conversion Claim</u>

As with the other tort theories asserted in this case, the Court should grant summary judgment on Personavera's claim for conversion under the gist of the action doctrine. "Conversion

is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Constr. Co. v. Griffith*, 2003 PA Super 374, ¶ 19 (2003). Where "the basis of the duty allegedly breached . . . was created by and defined by the contract itself" and "the success of the conversion claim depend[s] entirely on the obligations as defined by the contract," a tort claim for conversion cannot be maintained. *Id*. at ¶ 24. Here, the Prototype Testing Agreement signed by Braithwaite as Personavera's CEO expressly sets out the terms under which its prototype could be returned to Personavera. App'x 094a-95a. The basis of the duty to return Personavera's prototype is therefore created and defined by the Prototype Testing Agreement, and Personavera's claim is based on breach of that agreement rather than on the "breach of duties imposed as a matter of social policy." *Pittsburgh Constr.*, 2003 PA Super at ¶ 20 (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 2002 PA Super 347 (2002)). The Court should therefore grant summary judgment on Personavera's conversion claim.

### X.     There is No Evidence Supporting Personavera's Claims Against Branzell and Fraidenburg

Personavera has failed to adduce any evidence that would establish Branzell's or Fraidenburg's personal liability under any theory. First, Personavera has never made more than general allegations and claims that "Defendants," collectively, are responsible for the alleged wrongdoing. Personavera has never specified what, if anything, they alleged Branzell and Fraidenburg did to cause it harm. And while general allegations may withstand a Rule 12(b)(6) motion, at the summary judgment stage more is required.

Personavera identifies two statements by Branzell as allegedly deceptive or misleading. *See* App'x 070a. First is Branzell's statement that "I have zero doubt, with what I've seen through this process, that we'll have a solution in place." App'x 085a. This statement is vague and at best

mere puffery, not a statement of fact, and therefore non-actionable as fraud or negligent misrepresentation. *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 803 (E.D. Pa. 2011). Second is Branzell's email to Braithwaite, reading "I strongly encourage you to continue developing your proposal and move forward with in [sic] the Final Innovation Round." App'x 086a. Like the first statement, this is not a representation of fact; it is mere encouragement and well-wishing. The sole allegedly misleading statement attributed to Fraidenburg is the following quote: "The CHIME board of trustees from the very beginning saw this as important enough to our members and to the industry, that if it was necessary, the CHIME organization would fully fund the million-dollar prize. It was guaranteed at the start." App'x 086a-87a. Plaintiffs have not adduced any evidence showing that this statement was false. The mere fact that CHIME sought sponsors for the Challenge does not permit the inference that CHIME was not willing to guarantee the funding of the prize. These alleged statements by Branzell and Fraidenburg are simply not enough to establish liability for fraud. Furthermore, as explained elsewhere, Personavera has not adduced any "clear, precise and convincing evidence" of the elements necessary to establish fraud.

For the reasons explained elsewhere, Personavera's claims based on Illinois law must fail. Personavera's promissory estoppel claim must also fail, for the independent reason that "[n]o individual liability results under a theory of promissory estoppel when the promise was made by a representative of the corporation acting in his official capacity." *Inoff v. Craftex Mills, Inc.*, CIVIL ACTION NO. 06-3675, 2007 WL 4355385, 2007 U.S. Dist. LEXIS 91552, at *46 (E.D. Pa. Dec. 11, 2007). And there is no dispute that at all times, Branzell and Fraidenburg were acting in their official representative capacities. UMF ¶ 7. Additionally, Personavera has not adduced any information or made any specific allegation that either Branzell or Fraidenburg possessed or was

involved in retaining the Prototype. Therefore, the conversion claim against Branzell and Fraidenburg must likewise fail.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment.

Dated: August 2, 2021

Respectfully submitted,

**FLASTER GREENBERG**

By:   */s/ Jay M. Levin*
Jay M. Levin (I.D. No. 034561)
One Tower Bridge
100 Front Street, Ste 100
Conshohocken, PA 19428
Telephone: (215) 576-1730
Email: Jay.Levin@flastergreenberg.com

**WILLIAMS MONTGOMERY & JOHN LTD.**

By:   */s/ Christopher J. Barber*
Christopher J. Barber (*pro hac vice*)
Gary W. Garner (*pro hac vice*)
Jonathan Miller (*pro hac vice*)
Ashley Hyun-Jeong Kim (*pro hac vice*)
Willis Tower, 233 S Wacker Dr, Ste 6800
Chicago, IL 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
Email: cjb@willmont.com
Email: gwg@willmont.com
Email: jm@willmont.com
Email: ahk@willmont.com

*Counsel for Defendants College of Healthcare Information Management Executives, CHIME*

*Healthcare Innovation Trust, Russell Branzell,*
*and Keith Fraidenburg*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jay Levin, one of the attorneys for Defendants, hereby certify that on August 2, 2021, I

caused to be served a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on all counsel of record via the

Court's Electronics Case Filing ("ECF") system.

By:   */s/ Jay M. Levin*
Jay M. Levin (I.D. No. 034561)
**FLASTER GREENBERG**
One Tower Bridge
100 Front Street, Ste 100
Conshohocken, PA 19428
Telephone: (215) 576-1730
Email: Jay.Levin@flastergreenberg.com

*Counsel for College of Healthcare*
*Information Management Executives,*
*CHIME Healthcare Innovation Trust,*
*Russell Branzell, Keith Fraidenburg*